IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Bilal A. Al-Haqq, | ) | C/A No. 8:05-3215-HMH-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Report of Magistrate Judge** |
| | ) | |
| Sgt. Brown, and Officer Woodberry, | ) | |
| Security Maximum Unit Officers, | ) | |
| Evans Correctional Institution, | ) | |
| South Carolina Department of | ) | |
| Corrections, | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment and the plaintiff's motions to remand and to amend his complaint.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On September 21, 2005, the plaintiff brought this action in state court seeking damages for alleged civil rights violations. On November 17, 2005, the defendants removed this action to this federal court. On November 29, 2005, the plaintiff filed a response opposing the remand. On January 3, 2006, the defendants moved for summary judgment. By order filed January 4, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and

the possible consequences if he failed to adequately respond to the motion. On February 7, 2006, the plaintiff filed a response. On May 17, 2006, the plaintiff filed a motion to amend his complaint. The defendants filed a reply on June 5, 2006.

## FACTS PRESENTED

The plaintiff alleges the defendants allowed another inmate, Robert Thomas (Thomas), to assault him while the plaintiff was housed at the Evans Correctional Institution ("ECI"). (Compl. ¶ 1.)[1] On November 14, 2004, the plaintiff was serving food trays to inmates in isolation at the A-wing of the Special Management Unit ("SMU") when Thomas attacked him. ( Compl. ¶ 1; Brown Aff. ¶ 1.) At the time, defendants Sergeant Brown and Officer Woodberry were present. (*Id.*; Brown Aff. ¶ 2.)

The plaintiff contends that Inmate Thomas, who was not wearing restraints, was cutting another inmate's hair when he picked up a chair and swung it at the plaintiff hitting him in the head. (Compl. ¶ 1; Brown Aff. ¶ 1.) He alleges they fought for four or five minutes during which time the defendants watched without taking any action and prevented others from intervening. (Compl. ¶¶ 1-2.) He states eventually Defendant Woodberry told Thomas to put the chair down and returned Inmate Thomas to his cell. (Compl. ¶ 2; Brown aff. ¶ 2.) The plaintiff alleges two inmates told him that the defendants "set the whole thing up" and saw defendant Woodberry unlock Thomas' handcuffs. (Compl. at ¶ 2.) The plaintiff suffered injuries to his head, back, and arm. (Compl. 2.)

The plaintiff was treated 1½ hours after the incident on the day of the incident by

---

[1]The plaintiff initiated this action by simultaneously filing a complaint and an amended complaint. The plaintiff also recently filed a motion to amend his complaint. References to the complaint in this report are to the first amended complaint filed September 21, 2005, with the original complaint.

medical staff.  (Compl. ¶ 2.)  The plaintiff alleges the defendants delayed getting him

medical treatment in an attempt to conceal the incident.  (*Id.*)  He alleges he had two

medical appointments scheduled, but both were cancelled and he has not seen a doctor

since the incident.  (*Id.*)  The plaintiff alleges he has suffered "[p]ain, mental anguish, and

paranoia."  (*Id*.)

In a separate incident, the plaintiff alleges another inmate, Ezekial Thomas

(Ezekial), threatened him with a knife.  (*Id*.)  The plaintiff alleges defendant Brown, fearing

only for his own safety, ordered a shakedown to search for the knife, but it was not found

until the following morning.  (*Id*.)

## DISCUSSION[2]

### FAILURE TO PROTECT

The plaintiff alleges the defendants failed to protect him from an attack by another

inmate.  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands

of  other  prisoners."    *Farmer  v.  Brennan*,  511  U.S.  825, 833  (1994) (*quoting*

*Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S.

823  (1988)).  A prisoner's claim that officials failed to protect him from harm is analyzed

as a challenge to the prisoner's conditions of confinement.  *Id*.  The Eighth Amendment

---

[2]The defendants contend the plaintiff has failed to exhaust his administrative remedies.  On November 14, 2004, the plaintiff filed a Step 1 grievance which was referred to the SCDC Division of Investigations ("DOI").  The DOI found no merit to the plaintiff's allegations and referred the matter back to the grievance coordinator at ECI and the plaintiff's Step 1 grievance was denied on November 23, 2005.  The plaintiff filed a Step 2 grievance which was denied on May 26, 2006.  (See Doc. Entry # 16.) The plaintiff has exhausted his remedies. *Ceasar v. Ozmint*, Slip Copy, 2006 WL 1751715 n. 22 (D.S.C. filed June 19, 2006)(concluding that exhaustion ends at the issuance of the SCDC's Step 2 response in non-habeas prison condition cases).

expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, the Eighth Amendment is violated only when the plaintiff demonstrates (1) that he was incarcerated under conditions posing substantial risk of serious harm and (2) that the officials displayed "deliberate indifference" to his safety. *Id.* Here, the plaintiff cannot establish either that he was incarcerated under conditions posing substantial risk of serious harm or that the defendants were deliberately indifferent.

The plaintiff offers no evidence that the defendants knew or should have known that inmate Thomas posed a risk to the plaintiff's safety. The plaintiff alleges two inmates told him that the defendants "set the whole thing up" and saw the defendant Woodberry unlock Thomas' handcuffs. (Compl. at ¶ 2.) The plaintiff has submitted affidavits from three inmates regarding his claims. (Pl.'s Mem. Opp. Summ. J. Exs. 8-10.) Inmate Quinton Wilkie states that he was not present when the altercation occurred, but he "feel[s] as if the officers are the reason [the plaintiff] life got in danger in the first place." (*Id*. at Ex. 10.) He states every officer knew that other inmates wanted to kill the plaintiff. He contends that the officers allowed letters to be passed between inmates referring to the plaintiff as a snitch and threatening to kill him. (*Id*.) Another inmate, Jerome Long, merely stated he witnessed the altercation. (Pl.'s Mem. Opp. Summ. J. Ex. 9.) He does not allege that the officers knew of the altercation and deliberately ignored the serious risk to the plaintiff's

4

safety.  A third inmate, James Catledge, merely concludes that he "think[s] Sgt. Brown had it fixed for inmate's to get hit and beat on by the other inmates." (*Id*. at Ex. 8.)  The plaintiff has not offered evidence, other than these conclusory statements, that the defendants Woodberry and Brown arranged the attack or knew Thomas was going to attack the plaintiff and were deliberately indifferent to the plaintiff's safety.

Additionally, the plaintiff claims that the officers delayed in responding to the attack. However, he offers no evidence to establish this allegation.  His affidavit confirms that the defendants responded to the altercation and returned Thomas to his cell.  Additionally, the plaintiff suffered only minor injuries which would be inconsistent with an attack lasting 4-5 minutes.  His head injury was described as minor consisting of two swollen areas on the left side of his head.  He also had a small swollen area on his left arm and left clavicle area. (Def. Mem. Supp. Summ J. Ex. 5 at 6.)  It was noted that the plaintiff did not lose consciousness. (*Id.*)  The plaintiff was prescribed acetaminophen or ibuprofen and a medication for muscle spasms and was told to restrict his activities.  (*Id*.)  He did not complain of a back injury until two weeks later when he was again seen by the medical staff.  (Def. Mem. Supp. Summ J. Ex. 5 at 5.)  Some swelling and muscle spasms were noted and again the plaintiff was prescribed acetaminophen or ibuprofen and a medication for muscle spasms.  (*Id.*)  He was told to restrict his physical activities.  (*Id.*)  Two months later the plaintiff requested x-rays of his back in a Request to Staff.  (Id. at 7.)  Staff responded that only a doctor could order x-rays.  (*Id.*)  The record does not show that the plaintiff made any further requests.  On January 4, 2005, at a medical visit, the plaintiff is reported as saying his injuries from the incident were "better now."  (Def. Mem. Supp.

Summ J. Ex. 5 at 4.)  Furthermore, the plaintiff's de minimis injuries do not support his §

1983 claim.  *See  Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998)(holding "temporary

swelling and irritation is precisely the type of injury this Court considers de minimis.");

*Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir.1998) (holding "bruising of his right arm,

left jaw, left and right wrists and back, and a tooth which was loosened" constituted de

minimis injury).  Under these circumstances, the plaintiff cannot establish a violation of the

Eighth Amendment.  *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

The plaintiff has not set forth any evidence that the defendants knew that inmate

Thomas was any risk to the plaintiff and were deliberately indifferent.  Therefore, the

plaintiff's claim that the defendants were deliberately indifferent to his safety should be

dismissed.

### Conspiracy

The plaintiff alleges the defendants conspired to arrange the altercation.  To

establish a civil conspiracy under § 1983, the plaintiff must present evidence that the

defendants acted jointly in concert and that some overt act was done in furtherance of the

conspiracy, which resulted in deprivation of a constitutional right.  *Hinkle v. City of*

*Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  The plaintiff must come forward with specific

evidence that each member of the alleged conspiracy shared the same conspiratorial

objective.  *Id*.  To survive a summary judgment motion, the plaintiff's evidence must

reasonably lead to the inference that the defendants came to a mutual understanding to

try to "accomplish a common and unlawful plan."  *Id*.  The plaintiff's allegation must amount

to more than "rank speculation and conjecture" and the plaintiff must show that the

6

defendants possessed an intent to commit an unlawful objective.  *Id*.  Here, as noted above, the plaintiff has presented nothing other than speculation that there was a conspiracy.

**MOTION TO AMEND COMPLAINT**

In his complaint, the plaintiff raises claims arising out of an inmate attack that occurred on November 14, 2004.  On May 17, 2006, the plaintiff filed a motion to amend his complaint to allege claims relating to a lock-up which occurred April 30, 2006.  The defendants filed a response on June 5, 2006, opposing the motion.

The plaintiff is seeking to add claims regarding his recent lock-up in the SMU of ECU, defendant Brown's presence in the SMU, and defendant Brown's alleged threats towards the plaintiff.  In regard to these new claims, the plaintiff is seeking a transfer from the SMU and a restraining order against defendant Brown.  Additionally, the plaintiff wants to add conspiracy claims against several unnamed supervisors.  (Pl.s' Mot. Am. Compl. at 2.)

Federal Rules of Civil Procedure 15(a) provides that: "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Under the rule's liberal construction, *see Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987), motions to amend should be granted absent extraordinary circumstances.  Such circumstances include undue delay, bad faith or dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opposing

party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The plaintiff

wants to add totally new claims against new defendants as well as the existing defendants.

To do so, would cause undue delay and be prejudicial to the defendants.

Furthermore, looking at the new claims the defendants wants to add, the

amendments would be futile. "If proposed claims are untimely, unexhausted, procedurally

defaulted, or if they otherwise fail as a matter of law, amendment should be denied as

futile." *See Schurz v. Schriro*, 2006 WL 89933 (D.Ariz. 2006); see also *Sartori v.

Angelone*, 2001 WL 34810314 (E.D.Va. 2001). First, the law is clear that "[m]ere

threatening language and gestures of a custodial officer do not, even if true, amount to

constitutional violations." *Morrison v. Martin*, 755 F.Supp. 683, 687 (E.D. N.C.) aff'd 917

F.2d 1302 (4th Cir.1990)(citing *Coyle v. Hughs* 436 F.Supp. 591, 593 (W.D. Okla.1977)).

Second, there is no constitutional right for a state prisoner or federal prisoner to be housed

in a particular institution, at a particular custody level, or in a particular portion or unit of a

correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); and *Ange

v. Paderick*, 521 F.2d 1066 (4th Cir.1975). Furthermore, the plaintiff clearly has not

exhausted his administrative remedies on these new claims. Because the plaintiff's new

claims are unexhausted and fail as a matter of law, the plaintiff's motion to amend his

complaint should be denied as futile.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary

Judgment be GRANTED; the Plaintiff's Motion to Amend the Complaint be DENIED; and

the Plaintiff's claims be DISMISSED with prejudice.

Further, it is RECOMMENDED that, if the district court adopts this report, that the Plaintiff's motion to remand be DENIED.

IT IS SO ORDERED AND RECOMMENDED.


S/Bruce H. Hendricks
United States Magistrate Judge

August 11, 2006
Greenville, South Carolina